Memorandum: Elaintiff commenced this action seeking damages for injuries she sustained when she slipped and fell on a snow- and ice-covered walkway on school premises owned by defendant. After trial, the jury returned a verdict finding that defendant was not negligent. We agree with plaintiff that Supreme Court erred in denying her posttrial motion to set aside the verdict and for a new trial inasmuch as the verdict is contrary to the weight of the evidence (see CFLR 4404 [a]). Although *1185 plaintiff appeals from the order denying her posttrial motion and not the subsequently-entered judgment, we nevertheless exercise our discretion to treat the notice of appeal as valid and deem the appeal as taken from the judgment (see CPLR 5520 [c]; Hughes v Nussbaumer, Clarke & Velzy, 140 AD2d 988, 988 [1988]).
With respect to the merits, we conclude that “the evidence so preponderate [d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence” (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks omitted]; see Higgins v Armored Motor Serv. of Am., Inc., 13 AD3d 1087, 1088 [2004]). It is well established that “[a] landowner must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk” (Basso v Miller, 40 NY2d 233, 241 [1976] [internal quotation marks omitted]; see Witherspoon v Columbia Univ., 7 AD3d 702, 702-703 [2004]). “Once a [landowner] has actual or constructive notice of a dangerous condition, the [landowner] has a reasonable time to undertake remedial actions that are reasonable and appropriate under all of the circumstances” (Friedman v Gannett Satellite Info. Network, 302 AD2d 491, 491-492 [2003]; see Sartin v Amerada Hess Corp., 256 AD2d 857, 857 [1998]).
Here, as conceded by the dissent, it is undisputed that the compacted snow and ice remaining on the walkway at the time of plaintiff’s accident constituted a dangerous condition and that defendant had actual notice of the dangerous condition. Indeed, defendant’s head custodian in charge of snow removal repeatedly testified that the walkway at issue, which was regularly used by students and faculty entering and exiting the school, was “very icy” on the morning of the accident. The accident occurred sometime between 7:00 a.m. and 7:30 a.m., when classes began. The head custodian and another custodial employee testified that, prior to that time, they dragged snow from the walkway using the back blade of a tractor and spread salt on the walkway using a snow blower with a salt spreader attachment. Nevertheless, the walkway was still covered in ice and snow and thus was slippery at the time of plaintiffs fall. The head custodian confirmed that, when he responded to the accident site after learning of plaintiffs fall, “ice covered the entire [walkway]” and that he found plaintiff “laying on top of ice.” Plaintiff similarly testified that the walkway was “covered with ice and snow” and that she could not see the pavement. *1186 Plaintiff described the ice as hard, thick and rough. Plaintiffs mother, who visited the school the day after the accident, described the surface of the snow- and ice-covered walkway as “white and hard.” She confirmed that it looked as though the snow had melted and had frozen again, resulting in “hard ice.” Plaintiffs mother took photographs of the area where plaintiff fell, which depict compacted snow and ice covering the majority of the walkway with spots of bare pavement showing through and snow piles lining the walkway. Significantly, the head custodian testified that the photographs did not accurately depict the conditions that existed on the date of plaintiffs accident because the photographs showed “dry spots . . . where [he] believe[d] the salt had penetrated,” and those dry spots had not been there when plaintiff fell.
We conclude that the trial evidence establishes that defendant’s efforts to ameliorate the dangerous condition were not reasonable and appropriate under the circumstances and thus that defendant was negligent (see generally McGowan v State of New York, 79 AD3d 984, 985-987 [2010]; Chase v OHM, LLC, 75 AD3d 1031, 1033 [2010]). Notably, defendant did not contend at trial, nor does it contend on appeal, that there was a storm in progress or that it lacked sufficient time to remedy the dangerous condition of the walkway before plaintiff fell (see generally Salvanti v Sunset Indus. Park Assoc., 27 AD3d 546, 546 [2006]; Lyons v Cold Brook Cr. Realty Corp., 268 AD2d 659, 659 [2000]). Rather, defendant contends, in essence, that it fulfilled its duty by plowing and salting on the morning of the accident, that it had no obligation to remove any of the remaining snow or ice and that, in any event, it was impossible to remove any of the remaining snow or ice. In support of that position, the head custodian testified that defendant had no written procedures or usual practice for removing ice because “that’s just part of mother nature” and that the custodial employees “don’t remove the ice, [they] just spread the salt.” He admitted that the back blade of the tractor is not effective in removing accumulated ice from the walkways and that defendant owned no other tools or machines to be used for that purpose. Thus, where there is a thaw followed by freezing temperatures resulting in hardened snow, defendant’s employees simply drag snow from the walkways using the tractor’s back blade and then “spread as much salt as possible to get better traction on the surface of the sidewalks leading to and from the school.” With respect to the date of the accident, the head custodian testified that it was “very, very cold that morning” and that “even if [idefendant] did throw as much salt as possible [on the walkway], it just didn’t penetrate the ice[,] . . . [i]t was only . . . good for traction” (emphasis added).
*1187 Defendant’s contentions that it was “impossible” to remedy the dangerous condition of the walkway and that it took adequate measures to remove the snow and ice were refuted by the undisputed testimony of plaintiffs expert meteorologist and the certified weather records admitted in evidence. Both the meteorologist and the head custodian testified that salt becomes ineffective at around 10 degrees. In the two days prior to the date of the accident, however, area temperatures ranged from a low of 22 degrees to a high of 39 degrees, which the meteorologist testified were “well within the range for salting to be effective in melting snow and ice.” The temperature at 7:00 a.m. on the date of the accident was 25 degrees. Additionally, the evidence at trial establishes that defendant allowed the snow and ice to build up on the walkway over several days. Plaintiffs meteorologist testified that there was no sleet or rainfall in the area in the four days preceding the date of the accident and that the only significant snowfall occurred four days prior to the date of the accident, when 2.9 inches fell. That storm occurred on the Saturday before the accident occurred, and the head custodian admitted that defendant undertook no snow removal efforts over that weekend. Plaintiff testified that the condition of the walkway on the Monday and Tuesday prior to her fall was “pretty much the same” as on the Wednesday when the accident occurred, i.e., that the walkway was covered in hard packed snow and ice.
Although defendant and the dissent cite several Third Department cases for the proposition that the failure to remove all snow and ice from a surface does not constitute negligence (see Cardinale v Watervliet Hous. Auth., 302 AD2d 666, 666-667 [2003]; Gentile v Rotterdam Sq., 226 AD2d 973, 974 [1996]), those cases involve situations where the plaintiff fell on scattered patches or a thin layer of snow or ice (see Cardinale, 302 AD2d at 666-667; Gentile, 226 AD2d at 974). Here, by contrast, plaintiff fell on a snow- and ice-covered walkway under circumstances in which defendant had ample opportunity to remedy the dangerous condition, and defendant’s remedial efforts were plainly insufficient to render the walkway reasonably safe (see generally McGowan, 79 AD3d at 986-987; Priester v City of New York, 276 AD2d 766, 766-767 [2000]).
The dissent contends that the meteorologist’s testimony is inconsistent and, at times, directly contradicts the documentary exhibits concerning a lake effect snow band in the greater Rochester area on the morning of plaintiffs accident. We disagree. The meteorologist consistently testified that the Doppler imagery depicted a band of light-to-moderate lake effect snow across *1188 the City of Rochester beginning at approximately 5:30 a.m. the morning of the accident; that the snow band lasted approximately 30 to 45 minutes and resulted in a total snow accumulation of less than one inch in the city; and that the heaviest snowfall from the snow band was focused north of route 104, while the school is south of that roadway. Inasmuch as the meteorologist was the only witness qualified to interpret the documentary exhibits relating to the weather conditions on the date of the accident, there is no basis to conclude that his testimony contradicts those exhibits.
Contrary to the further contention of the dissent, the evidence establishes that the icy condition of the walkway did not result from the weather conditions that occurred close in time to the accident. The meteorologist testified without contradiction that the “fluffy,” “dry” flurries of lake effect snow that fell in the Rochester area in the hours leading up to the accident could not have caused the compacted snow and ice depicted in plaintiffs photographs and testified to by plaintiff. Rather, the meteorologist testified that the condition of the walkway appeared to have been created by the melting and refreezing of earlier snow accumulation (see generally Bojovic v Lydig Bejing Kitchen, Inc., 91 AD3d 517, 518 [2012]; Sheldon v Henderson & Johnson Co., Inc., 75 AD3d 1155, 1156 [2010]; Ferrer v City of New York, 49 AD3d 396, 397 [2008]). Indeed, the head custodian testified that, even though defendant removed snow from and applied salt to the walkway shortly before plaintiffs accident, “large areas of ice” remained due to the accumulation of snow and ice in the days leading up to plaintiffs accident.
Moreover, we note that none of defendant’s employees testified at trial that it was snowing at the school on the morning of the accident. Instead, the head custodian testified that he “believe[d]” that there was “heavy rain” on the Monday and Tuesday prior to the accident “because that’s the only way that the ice would have frozen up that hard where we [were not] able to remove it, even spreading the salt,” and that there was freezing rain on the morning of the accident. Defendant’s other custodial employee testified that he “thought” that it had rained the day or week prior to the accident. The meteorologist unequivocally testified, however, that it did not rain in the five days up to and including the day of the accident. According to the meteorologist, there were no official reports of rainfall and the area weather conditions were not conducive to rain. Thus, the testimony of defendant’s employees regarding the rainy conditions in the days preceding and on the day of the accident are not credible as a matter of law (see Dorazio v Delbene, 37 AD3d 645, 646 [2007]).
*1189 In light of our determination, we do not address plaintiffs contention that reversal is required based on the court’s charge to the jury concerning the applicable standard of care.
We therefore reverse the judgment, grant the posttrial motion, set aside the verdict, reinstate the complaint and grant a new trial (see Canazzi v CSX Transp., Inc. [appeal No. 2], 61 AD3d 1347, 1348; Pellegrino v Youll, 37 AD3d 1064, 1064 [2007]).
All concur except Scudder, EJ., and Smith, J., who dissent and vote to affirm in the following memorandum.